HARDY, Judge.
This suit was originally instituted by plaintiff against T. L. James & Company, Inc. for damages allegedly resulting from an overflow caused by defendant’s work on the highway adjacent to plaintiff’s described property in Jackson Parish. By supplemental petition the contracting firm of Cunningham & McCullen and its insurer, Employers Mutual Liability Insurance Company, were named as additional defendants. On trial it was stipulated that any judgment against the James Company should be rendered against the Atlas Construction Company which was the actual contractor with the State of Louisiana for the highway construction in the vicinity involved. After trial judgment was rendered in favor of plaintiff and against Atlas Construction Company in the principal sum of $1,500.00, and there was further judgment rejecting plaintiff’s demands against Cunningham and McCullen and its insurer. From this judgment plaintiff has appealed, praying for an increase in the amount of the award and also for judgment against the partnership of Cunningham and McCullen and its insurer. Defendant, Atlas Construction Company, has appealed, praying for judgment rejecting plaintiff’s demands, and, alternatively, for a reduction in the amount of the award.
Plaintiff alleged that he was the owner of a one-story frame building which he used and operated as a roller skating rink on the property described; that sometime during the months of January, February or March, 1959, the defendants, engaged in widening U. S. Plighway No. 167, negligently stopped up the ditch and culvert which drained plaintiff’s property, causing water to stand under the buildings for a period of several days, thereby causing extensive damage, particularly to the floor of the skating rink. Plaintiff prayed for damages for the cost of repairing the floor of his building and for the loss of profits during the time it was unfit for use.
The defense is a general denial of any negligence which caused or contributed to the damage to plaintiff’s building, coupled with the affirmative contention that the damage to plaintiff’s building was caused by an accumulation of moisture underneath the same due to unusually heavy rainfalls and had no relation to any interference with the natural drainage by reason of the highway construction work.
After close study of the record before us, we find that the issue presented by this appeal can be reduced to the simple question as to whether plaintiff has supported his claims of damage resulting from defendants’ negligence by a preponderance of the evidence. It follows that this question becomes purely factual in nature.
The basis of plaintiff’s claims against the defendant contractors rests upon the conclusion that their work in connection with the widening of U. S. Highway No. 167 *793 and the removal and displacement of dirt in connection therewith, caused a stoppage of the draining ditch and a culvert therein running under a double driveway entering plaintiff’s premises from the highway. As a result of this stoppage of drainage facilities, plaintiff contends that his property was flooded by rainwater which could not and did not properly drain into the ditch and culvert provided, and that the damage to his building was the reasonable consequence thereof.
Plaintiff’s skating rink is located on the east side of the highway and the natural drainage is to the north and west of the building. In support of his claims plaintiff ■offered the testimony of a number of witnesses, among them being Honorable I. J. Allen, member of the State Legislature representing Jackson Parish, and Mr. E. M. Wilder, a maintenance engineer for the State Highway Department, who are particularly mentioned by reason of the fact that complaints as to the existing overflow condition were made by plaintiff to Mr. Allen, and, in turn, conveyed to Mr. Wilder.
Careful study of the transcript of evidence fails to reveal to us the exact dates of the rainfall which triggered the flooding of plaintiff’s property. The testimony of all ■of the witnesses on this point is vague and uncertain, and we can only conjecture that the condition resulted from one or two periods of excessively heavy rainfall sometime during the early part of the year 1959.
Mr. Allen testified that he was contacted by plaintiff and made an inspection trip of the area, observing water overflowing the drainage ditch between plaintiff’s property and the highway, the driveways leading from the highway, and the highway itself. There is no question as to the establishment of these facts, not only by the testimony of Mr. Allen but by the supporting testimony of a number of other witnesses. Nor do we regard the fact that the culvert, laid in the drainage ditch between plaintiff’s property and the highway and the driveways, was completely stopped up, or almost so, by dirt and other debris as open to question. Notwithstanding the certainty of establishment of these facts, we cannot find sufficient testimony in the record to support a conclusion that there was any negligence on the part of the defendant contractors. We think plaintiff has completely failed to establish the fact that the conditions which caused the damage for which he seeks redress resulted from any obstruction to the drainage provided by the ditch and the culvert.
On behalf of defendants the testimony of Mr. Harry C. Disbrow, an expert civil engineer, seems to us to be' particularly convincing. This witness, thoroughly qualified by education and experience, a licensed and registered civil engineer under the laws of this State, employed by the Louisiana Department of Highways as a project engineer, made a topographical map of plaintiff’s property and the immediately surrounding area, which was received in evidence together with his written report explaining the same in connection with his testimony given on trial. The testimony of Mr. Disbrow, and the documentary evidence referred to, conclusively established certain material and controlling facts, namely, that plaintiff’s property sloped and therefore drained to the north and west of his building ; that comparative elevations showed every corner of plaintiff’s building to be above the top of the drainage ditch and the concrete highway. As we appreciate the effect of the testimony of this witness in connection with his report and written opinion, the natural drainage of plaintiff’s property would not have been affected even by the complete stoppage of the ditch between such property and the highway as well as the culvert located therein. This is true because the natural elevation and slope would have caused water to drain across the highway itself and into the ditch on the west side thereof.
On this point we note that the written opinion of our learned brother of the district court, before whom the case was tried, did not analyze in any detail the testimony of the witnesses and rejected the weight and *794 effect of the expert testimony of Mr. Dis-brow on the ground that his testimony was theoretical and was overcome by actual physical facts of a convincing nature which were not observed by the expert. We regret that we find it necessary to differ from our esteemed colleague on this point. While it is true that the immediate situation was not observed by Mr. Dishrow at the time of its occurrence, and while it is also true, as we have above conceded, that unusually heavy rainfall would cause the inundation of plaintiff’s property for a brief period of time, it is further true, according to the statements of all of the witnesses, that the water resulting from a deluge of rain was draining over the top of the ditch and across the highway. Nor is there any definite testimony, even by plaintiff himself, as to the standing of water on his property for any substantial period of time following the unusually heavy fall of rain.
The testimony of plaintiff, as well as other witnesses, clearly establishes the fact that the damage of which he complains was caused by water which stood underneath his building, until he effected the drainage thereof by a small ditch. In our opinion, this fact has no relation to the question of negligence on the part of defendants, and we think the conclusion is obvious that the damage to the floor of plaintiff’s skating rink was caused by the absorption of moisture from water standing underneath the building. This could not possibly have been attributable to the fault of defendants, but could only have resulted from uneven depressions of the ground beneath plaintiff’s building which served as catch basins for water collected by the natural drainage conditions of his own property.
We think it is important to point out the fact that Mr. Disbrow’s testimony stands unrebutted, and that no attack has been made as to the correctness of the elevations shown on his topographical map. Finally, we think it is important to observe that none of the witnesses testified as to the standing of water on plaintiff’s premises for any excessive period of time except underneath the building.
In view of our understanding and appreciation of the facts as above related, which we hold to be affirmatively and preponderantly established, it follows that plaintiff has failed to establish his claims by the requisite preponderance of the evidence.
For the reasons assigned the judgment appealed from is annulled, avoided, set aside and reversed, and
IT IS NOW ORDERED, ADJUDGED AND DECREED that the demands of plaintiff be and they are hereby rejected at his cost.